## STATE v. BENSON.

No. 2615.    Decided April 8, 1915 (148 Pac. 445).

1. RAPE—STATUTORY RAPE—"ATTEMPT"—INDICTMENT—STATEMENT
OF PARTICULAR ACTS. In a prosecution for assault upon a fe-
male of fifteen with intent to have carnal knowledge, under
Comp. Laws 1907, section 4221, providing that any person who
shall carnally know any female between thirteen and eighteen
years of age shall be guilty of a felony, and under section 4495,
providing that any act done with intent to commit a crime, but
failing to effect its purpose, is an "attempt" to commit a crime,
where the indictment alleged that defendant "did lay hold upon
the person of said * * * and threw her to the ground," etc.,
such indictment was not improper as embodying unnecessary al-
legations calculated to prejudice the jury, as the evidence sub-
stantiated the allegations.[1]  (Page 76.)

2. CRIMINAL LAW—DEMONSTRATIVE EVIDENCE—CLOTHING. In a
prosecution for assault upon a female of fifteen with intent to
have carnal knowledge, a skirt worn by prosecutrix at time of
the assault, which she testified the defendant had torn, although
it had been washed and worn subsequently, was properly admit-
ted in evidence to show the extent of the tear as indicative of
violence.  (Page 77.)

3. CRIMINAL LAW—PROVINCE OF JURY—WEIGHT OF EVIDENCE. The
weight of evidence is for the jury.  (Page 77.)

4. WITNESSES—IMPEACHMENT—CONTRADICTION. In a prosecution
for assault with intent to have carnal knowledge where the
state produced the mother of the prosecutrix as a witness, she
not testifying as to a certain conversation with defendant, who,
however, being asked, testified on cross-examination that he had
a conversation with the woman, but denied that he had made
the statements attributed to him, she being then called in re-
buttal, and contradicting him, the introduction of her testimony
in rebuttal as tending to impeach the defendant, proper foun-
dation therefor having been laid, was proper, since the state-
ments which were denied might have been introduced in evi-
dence against him as part of her evidence in chief; a party's
declarations against interest, being admissible as independent
evidence against him, may be shown without first calling them

[1]Distinguishing State v. Evans, 27 Utah, 12, 73 Pac. 1047; State v.
Williamson, 22 Utah, 248, 62 Pac. 1022, 83 Am. St. Rep. 780.

to his attention, although they also tend to discredit him by reason of inconsistency with his testimony, while the evidence, being properly before the jury, may be considered as affecting his credibility.   (Page 78.)

5.  WITNESSES—CROSS-EXAMINATION OF DEFENDANT IN CRIMINAL CASE.  In a prosecution for crime, where the court permitted questions to be asked of the defendant on cross-examination as to whether he had had a conversation with the mother of the prosecutrix, there was no error, since the right to lay a foundation for impeachment by testimony of the mother did not depend upon whether the questions propounded for that purpose were of themselves proper cross-examination.  (Page 79.)

6.  CRIMINAL LAW—EVIDENCE—MAP OF LOCALITY OF CRIME—TAKING TO JURY ROOM.  In a prosecution for crime, where a map used at the trial to illustrate testimony with regard to the movements of the parties was not formally introduced in evidence, but was given to the jury by a bailiff, and consulted by them in the jury room, the use of such map by the jury merely to gain better understanding of the testimony was proper, and the irregularity of its having been used by them without being formally introduced in evidence did not affect the legality of the verdict or the fairness of the trial.[2]  (Page 80.)

7.  CRIMINAL LAW—PROVINCE OF JURY—WEIGHT OF EVIDENCE.  Questions as to the weight of evidence and credibility of witnesses, as affected by slight discrepancies in testimony, are for the jury, and beyond the reach of the appellate court, where some substantial evidence supports every essential ingredient of the offense charged.  (Page 81.)

8.  CRIMINAL LAW—TRIAL—INSTRUCTIONS—REFUSAL OF REQUESTED CHARGE.  Where the jury is charged fully and accurately, no error can be predicated upon any refusal to give any requested instruction.  (Page 81.)

Appeal from District Court; Fifth District; Hon. *J. Greenwood*, Judge.

The appellant was convicted of a felony.  He appeals.

AFFIRMED.

*W. F. Knox* for appellant.

---

[2]*State* v. *Riley*, 41 Utah, 225, 126 Pac. 294.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen. for the State.

FRICK, J.

The appellant was convicted of a felony, namely, of an assault upon a female of the age of fifteen years with intent to have carnal knowledge, and appeals.

A large number of errors are assigned, but we shall consider those only which are argued in appellant's brief.

Comp. Laws 1907, Section 4221, provides:

"Any person who shall carnally and unlawfully know any female over the age of thirteen years and under the age of eighteen years shall be guilty of a felony."

Section 4495, in part, provides:

"Any act done with intent to commit a crime, intending but failing to effect its commission, is an attempt to commit a crime."

In the information it was charged that:

Appellant "then and there willfully, unlawfully, feloniously, and with force and violence did make an assault upon the person of one (naming the prosecutrix), *and did then and there lay hold of the person of said  *  *  *  and threw her upon the ground* with the intent her, the said,  *  *  * then and there willfully, unlawfully and feloniously to carnally know, she, the said,  *  *  * being then and there a female over the age of thirteen years, and under the age of eighteen years, to wit, of the age of fifteen years," etc. (Italics ours.)

It is contended that the words set out in italics were unnecessary to the charge, and were prejudicial to the appellant. It is asserted that in *State* v. *Evans,* 27 Utah, 12, 73 Pac. 1047, and in *State* v. *Williamson,* 22 Utah 248, 62 Pac. 1022, 83 Am. St. Rep. 780, it was held that an information in the language of the sections we have quoted above was sufficient without setting forth specific acts of the accused in making the attempt to have carnal knowledge. It is true that it was, in effect, so held in those cases. The holding was, however, in answer to the contention that the information was insufficient because the specific acts attributed to

the accused in attempting to have carnal knowledge were not set forth. Neither of those cases is authority for the claim that it constitutes error to set forth the acts of the accused in making the attempt to have carnal knowledge. Nor do we think that a holding to that effect would be either sound or reasonable. In this case the evidence introduced on behalf of the state supported the acts as charged in the information and as we have outlined them, and hence we cannot see how the appellant could have been legally prejudiced by what was charged in the information. It certainly was proper on the part of the state to prove just what it was claimed the appellant did in making the attempt to have carnal knowledge, and, if it was proper matter of proof, it could not have been prejudicial error to have alleged it.

It is next contended that the court erred in permitting the state to introduce in evidence the skirt which the prosecutrix testified she wore at the time of the alleged assault upon her by appellant, for the reason that it was made to appear that the skirt had been washed once and worn several times after the assault. The prosecutrix, in effect, testified **2, 3** that the appellant assaulted her and threw her upon the ground and attempted to raise up her clothes, and in doing so tore her skirt. She fully described the tear, and the skirt was produced before the jury for no other purpose than to show them the tear and the extent thereof. For that purpose it was proper to admit the skirt in evidence, and the fact that it had been worn and washed after the alleged assault would not be sufficient to authorize its exclusion from the jury. *Pate* v. *State,* 150 Ala. 10, 43 South. 343; Underhill on Criminal Evidence, Section 48. The weight to be given to the tear in the skirt as evidence of violence, if any, was for the jury. The authorities cited by counsel for appellant that articles and things generally which are to be used in evidence should be maintained in substantially the same condition they were in at the time of the occurrence of the acts which they are produced to evidence or to illustrate are good law, but they have no application here; since the tear in the skirt for evidentiary purposes was practically in the same condition, and the changes, if any, were fully described

to the jury before the skirt was admitted in evidence. The court committed no error, therefore, in admitting the evidence.

It is next contended that the court erred in permitting certain statements made by appellant on his cross-examination to be impeached. The state produced the mother of the prosecutrix as a witness. In her testimony in chief **4** she was not questioned, nor did she testify, respecting a certain conversation which she had with appellant on the morning succeeding the alleged assault upon her daughter, the prosecutrix. The appellant, however, testified in his own behalf, and upon cross-examination he was asked by the state's counsel whether or not he did not have a conversation with the mother of the prosecutrix on the morning succeeding the alleged assault in which he made certain statements. He admitted that he had a conversation with her, but denied that he had made the statements attributed to him in that conversation. The mother was then called in rebuttal to contradict the appellant. She testified that he had made the statements to which his attention was directed and which he denied making on his cross-examination as aforesaid. It is now insisted that the evidence was not proper rebuttal, and was also improper as impeachment. We think otherwise. The statements which appellant denied making could have been introduced in evidence against him as part of the mother's evidence in chief. This being so, the statements could also be introduced in rebuttal as tending to impeach the appellant, if proper foundation therefor was laid. The rule is tersely stated in 40 Cyc. 2723, in the following words:

"A party's declarations or admissions against interest, being admissible as independent evidence against him, may be shown without first calling them to his attention, although they also tend to discredit him by reason of inconsistency with his testimony, and the evidence, being properly before the jury, may be considered by them as affecting his credibility. But, where it is sought to bring statements of a party contradictory to his testimony into the case for the sole purpose of impeachment, a foundation must be laid the same as for the impeachment of any other witness."

This is the prevailing rule. In some of the New England

states it is not even necessary to lay a foundation for impeach-
ment by calling attention to the conflicting or variant state-
ments, if any are shown.  Counsel for appellant, in their brief,
referring to this matter, say: ''The state had the right to
ask her (the mother) touching any admissions or statements
made to her by the defendant (appellant), but the state failed
to ask her about any statements made to her by defendant.''

What counsel say is true, but the state laid the foundation
for impeachment by asking appellant upon cross-examination
whether or not he had made the statements attributed to him
in the question propounded to him.  To concede, therefore,
that the mother could have testified to the statements inquired
into on her testimony in chief is to concede their relevancy
and materiality, and hence it was proper to direct the atten-
tion of appellant to those statements, and ask him concern-
ing their truth on cross-examination, and, if he denied mak-
ing the statements, the mother could be called on rebuttal,
just as was done, to impeach him.  In view that the appel-
lant testified in his own behalf in this case, the state was
given the choice of methods, whether to prove the statements
as part of the evidence in chief or as was done.  Of course, if
appellant had not testified as a witness, then any statements
attributed to him would have to be produced as evidence in
chief, and not in rebuttal in the form of impeachment.

What has been said also disposes of the contention that the
court erred in permitting the foundation questions to be pro-
pounded to appellant because they were not proper
cross-examination.  The right to lay the foundation for
impeachment does not depend upon whether the ques-
tions propounded for that purpose are, in and of themselves,
proper cross-examination or not.  If that were the case, the
accused could always prevent impeachment by remaining
silent with respect to the contradictory statements.  If he tes-
tifies with respect to matters which it is claimed are contra-
dictory of his former statements, he may be cross-examined
upon them as a matter of course, and, if he remains silent
with regard thereto in his testimony in chief, he may, never-
theless, be questioned concerning them in a proper way for
the purpose of laying the foundation for impeachment upon

his cross-examination. The District Court committed no error, therefore, in permitting the questions to be propounded to the appellant nor in receiving the statements of the mother in contradicting appellant.

It is further contended that prejudice resulted to appellant because the jury were permitted to have before them a certain map or plat which was used at the trial of the case to illustrate the testimony of the witnesses in regard to     6 the movements of the prosecutrix and the appellant on the night of the alleged assault and where it occurred. It is contended that the map in question was not formally introduced in evidence, and hence it was error to permit the jury to take the same to the jury room and to inspect the same during their deliberations. It seems the map was given to the jury by the bailiff who had them in charge, which fact was made to appear for the first time on appellant's application for a new trial. It was also made to appear from the record that both the appellant and his counsel knew at the time that the map was given to the jury, but neither of them made any objection or protest until after the verdict was returned. Assuming, without deciding, that they were not required to make any objection at the time, and that the objection in the motion for a new trial was timely, yet we cannot see how the appellant was prejudiced by permitting the jury to have before them the very map which was constantly referred to by the witnesses called by both parties to illustrate their testimony. The map, as a matter of course, did not constitute original nor independent evidence; and the jury must have so understood and regarded it. At most, it could only aid the jury by giving them a better understanding of the testimony of all of the witnesses who were familiar with the landmarks referred to on the map. For that purpose, it was proper, and the mere fact that it was taken to the jury room in the manner detailed could not change the purpose for which it was properly used. A question somewhat akin to the one now under consideration arose in *State* v. *Riley*, 41 Utah 225, 126 Pac. 294. In that case certain articles which were used in evidence were permitted to be taken by the jury to their room during their deliberations. It was

there held that, while it was improper to permit the articles to be taken by the jury as was done during their deliberations, yet, in view that the articles were used and referred to during the trial, it, at most, constituted an irregularity. which did not affect the legality of the verdict nor the fairness or impartiality of the trial. The objection here made to the use of the map in question by the jury as aforesaid, for patent reasons, is of much less force than was the objection to the use of the articles by the jury in the Riley case. While we do not wish to be understood as either directly or indirectly approving the practice of giving to the jury any article, map, or other thing used at the trial which is not formally introduced in evidence, and which does not come within our statute as a thing that may be taken to the jury room, yet in this case, as in the Riley case, what is objected to constituted merely an irregularity which does not affect the legality of the verdict.

It is next urged that the District Court erred in not granting appellant a new trial, for the reason that the evidence is insufficient to sustain the verdict. The evidence, all of which is preserved in the bill of exceptions, is sufficient to sustain the verdict of the jury. True, counsel for appellant points out slight discrepancies therein, and further adverts to some reasons why the state's evidence, in some particulars at least, should not be given credence. All those **7** questions, however, were for the jury to consider. We have no power to pass upon the weight of the evidence nor upon the credibility of the witnesses. All we may do is to scrutinize the evidence for the purpose of determining whether there is some substantial evidence in support of every essential ingredient constituting the charged offense. In this case there is sufficient evidence to sustain the charge, and hence we cannot interfere.

There are two other assignments urged in the brief. One of them relates to the instructions to the jury given by the court and to the failure to charge as requested. There is nothing in the contention that requires special consideration. **8** The law given in the court's charge was

Vol. 46—6

sufficiently full and specific to guard all the rights of the appellant and no error was committed, therefore, in the charge as given or in refusing to charge as requested. The only other assignment urged in the brief is too trivial to require discussion.

The judgment is affirmed.

STRAUP, C. J., and McCARTY, J., concur.