## STATE v. DONALD.

No. 5767.   Decided December 10, 1936.   (63 P. [2d] 246.)

*Ray S. McCarty* and *E. M. Morrissey*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Deputy Atty. Gen., for the State.

FOLLAND, Justice.

Defendant was charged by the information of the district attorney of the crime of forgery in two counts, first, by forging the name of Clyde Kime to an American Express Company traveler's check, and, second, with the uttering as true and genuine the same check with intent to defraud W. B. Olson knowing the same to be forged and false. The jury acquitted defendant on the first count but convicted him on the second. Defendant appeals, and bases his claim for reversal on two assignments of error: (1) Insufficiency of

the evidence to warrant the conviction; and (2) refusal of the court to grant a new trial for alleged misconduct of the jury during its deliberations.

Clyde Kime, a resident of Nebraska, 52 years of age, traveled by bus from his home in Nebraska to Los Angeles, Cal. He stopped over in Salt Lake City on March 14th for an hour or two during the bus stop. Before leaving Nebraska he had purchased five American Express Company traveler's checks in the denomination of $20 each. Each of these checks bore his signature in the upper left-hand corner. The checks were transferable when countersigned by the same person in a blank in the lower left-hand corner of the check, such countersigning to be in the presence of the person cashing the check. Kime was a witness for the state. He testified he had the five checks in his pocket on his arrival at the bus station in Salt Lake City; that he remained at or in the vicinity of the station until the bus left for Los Angeles in the evening; that he did not visit or converse with anybody. Some time later while on the bus he felt in his pocket for the checks and they were missing; that he did not countersign the checks or authorize any one to sign his name thereto. One of these checks was cashed by W. B. Olson, operator of a gasoline service station in Salt Lake City. Olson testified the check was presented and countersigned in his presence by the defendant on March 21, 1935. The information was based on this transaction. All five of the checks were introduced in evidence and the circumstances of their being cashed testified to. The defendant testified he was given the five checks by a companion whom he had transported in his automobile from Denver to Salt Lake City in payment of expenses for the trip, that they were countersigned at the time he received them, and that he did not sign or present for cashing the check in question but had given it back to the person from whom he received it. A witness, expert in handwriting, made a study of enlarged photographs of the signatures on the checks and other photographed genuine signatures of Clyde Kime. This

witness testified that in his opinion the alleged forged signatures were all in the handwriting of Kime. There was other evidence produced by defendant tending to support his defense that the check was not a forgery and that he did not cash the one forming the basis of the charge. It was not shown how the person from whom defendant obtained the checks came into their possession, but there is a strong inference that he obtained them, according to defendant's theory, by means of some gambling or confidence game wherein Kime parted with the checks after countersigning them.

Appellant has argued that the court may make its own comparisons of the disputed signatures with the genuine signatures of Kime and may substitute its conclusions with respect thereto for that of the jury. This he does on the theory that the expert witness' testimony was not disputed. This testimony was clearly disputed by the testimony of Kime, who said he did not countersign the checks and that the signatures thereon were not made or authorized by him. The credibility of the witnesses and the weight to be given them, or either of them, is for the jury. On conflicts in evidence such as shown by this record, it was for the jury to determine by its verdict where the truth lies. There is no question here involved, such as suggested by appellant, of the jury arbitrarily and capriciously disregarding undisputed testimony. There was a clear conflict with respect to every material fact.

There was no inconsistency in the verdict which found the defendant not guilty on the first count but guilty on the second. There was evidence in the record from which a jury could find that the defendant did not himself countersign the check although he pretended to do so, but that all the checks were countersigned by some one other than Kime or the defendant and that the defendant passed the check with knowledge of its falsity and with intent to defraud. There was sufficient evidence produced by the state to support the verdict of guilty of

uttering. The jury undoubtedly believed this testimony in preference to that offered on behalf of defendant.

During consideration of the case by the jury, after submission and before verdict, some members of the jury were uncertain as to the meaning of the word "utter." The foreman of the jury thereupon requested the bailiff to obtain a dictionary. The officer in charge of the jury thereupon brought to the foreman a standard dictionary of the English language. The foreman turned to the word " 'utter' as used in law" and read that definition to the jurors, some of whom looked at the book. The obtaining and using of the dictionary by the jurors is claimed to be such misconduct as to entitle appellant to a new trial. The matter was called to the attention of the trial court on motion for a new trial. In support of such motion two of the trial jurors were called by the defendant and on examination by his counsel testified respecting the matter of the use of the dictionary in substance as outlined above. The court denied the motion for a new trial and this ruling is assigned as error. It was undoubtedly irregular and improper for the officer in charge of the jury to take the dictionary to the jury room, and for the jurors to consult the same for the purpose of obtaining a definition of the word "utter." 64 C. J. 1032; *Long* v. *Payne,* 198 App. Div. 667, 190 N. Y. S. 803; *Corpus Christi St. & Interurban Ry. Co.* v. *Kjellberg* (Tex. Civ. App.) 185 S. W. 430; *S. Lightburne & Co.* v. *First National Bank of Rockport* (Tex. Civ. App.) 232 S. W. 343. The proper procedure would have been for the jury or the officer to report the matter to the court and for the court by additional instruction give the jury a definition of the word.

Such irregular conduct may or may not have been harmful or prejudicial. Our statute, Section 105,43-1, provides:

"After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment."

We are satisfied from the record that the irregular conduct was not prejudicial. No information was obtained from the dictionary except the definition of the word "utter" and had the court given the definition it would have been in substance the same as that found in the dictionary. The record was made by the two jurors who testified at the instance of the defendant on the hearing on motion for a new trial. Each testified as to the use of the dictionary and also the limitation of such use as we have indicated. In view of such record we cannot say that the irregular conduct resulted in prejudice to any substantial right of the defendant. *State* v. *Riley*, 41 Utah 225, 126 P. 294; *State* v. *Benson*, 46 Utah 74, 148 P. 445; *Ryan* v. *Beaver County*, 82 Utah 27, 21 P. (2d) 858, 89 A. L. R. 1253.

On cross-examination of the two jurors, the state attempted to elicit information which would tend to show that no prejudice had been suffered by the defendant. This testimony was objected to on the ground that it was incompetent for jurors to sustain their verdict by showing that matters improperly before the jury had no influence on the verdict. Note, 93 A. L. R. 1450. We reach our conclusion that defendant could not have been and was not prejudiced by the wrongful using of the book in the jury room after excluding from consideration all testimony objected to by the defendant. Enough appears from the testimony elicited by defendant's counsel as to the use made of the book to justify us in saying that no prejudice resulted to any substantial right of the defendant. These witnesses were called and testified without objection by the state so we are not required to pass on whether they were competent witnesses to impeach the verdict of the jury.

It was also shown that one of the jurors had in his possession a magnifying glass which he used to inspect the signatures on the checks. This is assigned as misconduct. Certainly there was no prejudice in this because the defendant went to a good deal of trouble and expense to have the signatures on the checks enlarged and

photographed and such photographs exhibited to the jury. The use made of such glass was not misconduct. 64 C. J. 1033. The court did not abuse discretion in refusing the motion for a new trial.

The judgment of the district court of Salt Lake county is affirmed.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.