STATE of Utah, Plaintiff and Respondent,

v.

Michael COUCH, Defendant and Appellant.

No. 17127.

Supreme Court of Utah.

Aug. 21, 1981.

---

1. *Oliveras v. Caribou-Four Corners*, Utah, 598 P.2d 1320 (1979).

John T. Caine, Ogden, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

A jury found defendant guilty of aggravated sexual assault, forcible sodomy, and kidnaping, and he was sentenced to concurrent terms of five years to life, one to five years, and five years respectively. On appeal, he argues: (1) that there was insufficient evidence of kidnaping; (2) that the sodomy conviction should be set aside because the trial judge refused the jury's request to define a term of common usage; and (3) that all three convictions should be set aside because the trial court refused to admit a juror's post-trial affidavit impeaching the jury's verdict. All statutory citations are to Utah Code Annotated, 1953, as amended, except where otherwise noted.

With one exception, identified below, defendant does not contest the facts on appeal. The prosecutrix and two friends were employed at a fast-food stand in Evanston, Wyoming. At various times during their late afternoon and evening shift, defendant came to the establishment and engaged them in conversation. The girls requested that he purchase liquor for them, which he did, and after work the four met in a motel room and had a drinking party. In the early morning hours, when the prosecutrix was too intoxicated to walk, defendant insisted on driving the girls to their homes in Wanship, Utah, and surrounding areas, some 50 miles distant, in prosecutrix's car. He said that he had a friend who would drive him back to Evanston. The girls finally agreed, although one of them had consumed no alcohol and was capable of driving.

Defendant drove prosecutrix's two companions to their homes. He then drove past

prosecutrix's house without stopping. Prosecutrix said, "Stop, this is where I live," but defendant replied, "You've got to take me to the freeway so my friend can pick me up so I can hitchhike back to Evanston." He then drove onto the freeway and asked prosecutrix if she thought she could drive back from Coalville, to which she replied that she could. Defendant drove past Coalville. When they reached Echo, he asked her if she could drive back from Echo. She again replied in the affirmative. Then he asked if she would take him to Evanston. Although she said "No," defendant "just kept going." Soon he turned off the freeway and drove the car down a dirt road, stopping in a deserted place.

Defendant opened the door, pushed prosecutrix out, and ordered her to take off her clothes. When she refused, he began to pull her hair and rip at her clothes. Prosecutrix attempted to fight off defendant by kicking and hitting him. She momentarily got free of him and ran to the car, but defendant caught the car door before she could close and lock it. Defendant then pushed her into the rear seat, forcibly removed her clothing, asked her if she wanted to live, and began choking her with her belt. She testified that she "couldn't breathe for quite a while." Defendant proceeded to put his mouth first on her breast, then on her vagina, and then to rape her. Defendant then drove the car with the prosecutrix to Evanston, where he got out at a motel, and prosecutrix drove home to Utah.

## I.

## THE MEANING OF KIDNAPING

Defendant argues that his act of detaining prosecutrix was merely incidental to the crime of aggravated sexual assault and in effect a lesser included offense that should not be the basis for a separate conviction.[1]

Because kidnaping statutes typically do not specify the duration of time or the circumstances under which the victim must be detained or how far the victim must be transported for a kidnap to occur, a literal application of such statutes could transform virtually every rape and robbery into a kidnaping as well. A defendant convicted of both kidnaping and what can be termed a "host crime" would in many cases receive a significantly heavier sentence than if only the host crime had been charged.

Mindful of this result, many courts have reassessed kidnaping statutes during the past two decades. Some jurisdictions have adhered to the traditional view that any detention or asportation, however slight or however closely related to another crime, is sufficient to support a kidnaping conviction.[2] Other courts have limited the application of kidnaping statutes to instances of "true kidnaping," where the kidnaping is not merely incidental or subsidiary to another crime but has independent significance.[3]

In contrast to some broader kidnaping statutes that have invited extensive judicial pruning, our Utah statute expressly limits the circumstances under which a detention will constitute kidnaping. Section 76–5–301 states in pertinent part:

(1) A person commits kidnaping when he intentionally or knowingly and without authority of law and against the will of the victim:

(a) Detains or restrains another *for any substantial period*; or

(b) Detains or restrains another *in circumstances exposing him to risk of serious bodily injury*; ... [Emphasis added.]

---

1. Defendant does not contend that he has been convicted of separate offenses on the basis of a single act as prohibited by § 76–1–402. See *State v. Ireland*, Utah, 570 P.2d 1206 (1977). We agree that § 76–1–402 has no application to this case.

2. See, e. g., *State v. Padilla*, 106 Ariz. 230, 474 P.2d 821 (1970); *State v. Ayers*, 198 Kan. 467, 426 P.2d 21 (1967).

3. See, e. g., *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965); *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677 (1969); *People v. Adams*, 34 Mich.App. 546, 192 N.W.2d 19 (1971).

Subject to statutory exceptions not applicable here, this narrowly drafted statute limits the scope of the crime of kidnaping by permitting a conviction only if at least one of two conditions is satisfied.[4]

The first condition is that the detention be for a "substantial period." Although this term can be defined only by reference to a specific fact situation, it apparently requires a period of detention longer than the minimum inherent in the commission of a rape or a robbery. Otherwise, this statute would merely provide a cumulative penalty for the commission of these crimes and any others that involve detention or restraint. The second condition is that the detention be "in circumstances exposing the victim to risk of serious bodily injury." While no circumstance incident to crime is entirely free from risk, this provision seems to require some circumstances of risk in addition to those inherent in the commission of crimes incidentally involving detention or restraint. On the facts of this case, the jury could have based its guilty verdict on either condition of this statute.

A kidnaping begins when the detention begins to be "against the will of the victim." In the instant case, the detention began to be against prosecutrix's will at the point where defendant continued to drive her car despite her expressed desire that he not do so, and continued at least until the sexual assault had been committed. The duration of this detention was clearly a "substantial period" within the meaning of subsection (1)(a).

In addition, the circumstances in which defendant detained prosecutrix exposed her to risk of serious bodily injury within the meaning of subsection (b). Forcibly removing a person a substantial distance from her normal surroundings and natural sources of aid to an isolated area where she is entirely at the mercy of her assailant necessarily involves the risk of serious bodily harm identified in the statute.

In either case, the kidnaping was not merely incidental or subsidiary to some other crime, but was an independent, separately punishable offense. Defendant's conviction for kidnaping is therefore affirmed.

## II.

### THE JURY INSTRUCTION ON FORCIBLE SODOMY

The trial judge's initial instruction to the jury accurately stated the law as found in § 76-5-403, which provides:

(1) A person commits sodomy when the actor engages in any sexual act involving the genitals of one person and mouth or anus of another person, regardless of the sex of either participant.

(2) A person commits forcible sodomy when the actor commits sodomy upon another without the other's consent.

After the jurors had retired for deliberation, they informed the judge through the bailiff that they desired to be further instructed on a point of law. Specifically, they asked the judge to define the term "genitals" as used in the statute. The judge refused to give the requested instruction.[5]

A conflict in the testimony suggests the reason for the jury's concern with the

4. See American Law Institute, Model Penal Code and Commentaries, § 212.1, Comment, pp. 220–226 (1980) for a discussion of policy considerations supporting such conditions.

5. Defendant apparently took no exception to the court's failure to instruct, but the record suggests that this omission may be excused on the facts of this case. Defendant alleged in his motion for a new trial that the court denied the jury's request without giving notice to defendant or his attorney as required by § 77-32-3, the statute applicable at the time (now superceded by § 77-35-17(m)). This Court has previously declared that it "will notice the failure to give an instruction even though it was not requested when the failure to give it would plainly result in a miscarriage of justice." *State v. Day*, Utah, 572 P.2d 703, 705 (1977). The same principle may apply when a party fails to except to the court's failure to give an instruction. *State v. Villiard*, 27 Utah 2d 204, 205, 494 P.2d 285, 286 (1972); *State v. Cobo*, 90 Utah 89, 101, 60 P.2d 952, 958 (1936). This principle applies to the instant case.

meaning of the word "genitals." One or more jurors might have believed defendant's denial that he put his mouth on prosecutrix's vagina, but nevertheless believed the prosecutrix's testimony that he put his mouth on her breast. Without a clarifying instruction, such a juror might have voted for conviction on the forcible sodomy charge in the mistaken belief that the term "genitals" includes the female breast. A proper definition should have prevented this mistake.

Did the trial court commit reversible error in refusing the juror's request for a definition of the statutory term "genitals"?

It is normally unnecessary and undesirable for a trial judge to volunteer definitions of terms of common usage for the jury. In *State v. Day*, Utah, 572 P.2d 703, 705 (1977), this Court stated:

> Ordinarily, non-technical words of ordinary meaning should not be elaborated upon in the instructions given by the court. It is presumed that jurors have ordinary intelligence and understand the meaning of ordinary words like "depraved" and "indifference."

Thus, it has been held that there was no need to define "intercourse" in a rape case, since that word has a common meaning.[6] On the other hand, in a case in which the defendant was accused of having administered poison, it was held that failure to instruct the jury on the meaning of "administer" was reversible error.[7] And in reversing for failure to define "concealed," another court held that "where the word is susceptible of differing interpretations, only one of which is a proper statement of the law, an instruction must be given."[8]

Where the jury requests the instruction, however, it is generally held error to refuse

to provide a definition, even where the word is a term of common meaning. *People v. Ochs*, 9 A.D.2d 792, 194 N.Y.S.2d 719 (1959); *State v. McClure*, W.Va., 253 S.E.2d 555 (1979). The United States Supreme Court, in an opinion by Justice Felix Frankfurter, expressed the basic principle as follows:

> Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. *When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.* [Emphasis added.]

*Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). The same principle undergirds the Utah statutes in force at the time of this trial, the former § 77–32–3, which states in pertinent part:

> After the jury shall have retired for deliberation, ... *if they desire to be informed on any point of law arising in the cause ... the information required must be given* in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel. [Emphasis added.][9]

 This principle applies to the instant case. Where the jury requests it, the definition of a term critical to the meaning of a criminal statute is a point of law. Jurors cannot be considered properly instructed on a criminal statute if they are demonstrably confused about the meaning of the words used in it. Despite the risk that supplying a definition will "obfuscate the normal interpretation of familiar

**6.** *Commonwealth v. Maroney*, 199 Pa.Super. 561, 186 A.2d 864 (1962).

**7.** *People v. Gaither*, 173 Cal.App.2d 662, 343 P.2d 799 (1959).

**8.** *McKee v. State*, Alaska, 488 P.2d 1039, 1043 (1971).

**9.** This section has since been repealed. It was replaced by the current § 77–35–17(m), which took effect July 1, 1980. The current statute

states in pertinent part that if the jurors "desire to be informed on any point of law arising in the cause, ... the court shall respond to the inquiry or advise the jury that no further instructions shall be given." This case presents one circumstance in which, even under the current statute, the court should "respond to the inquiry."

words," [10] where a jury at its own instance requests the definition of a term whose understanding is essential to a proper application of the law, the trial judge must provide the requested definition. In the application of this rule, we see no reason to distinguish between terms of art and non-technical words of common usage. The critical fact is that the jury has signified its lack of understanding of the meaning of a word it must apply in performing its function.

■ The word "genitals" was a key word the jury had to understand as it sought to apply the relevant statute to the testimony in this case. When the jury requested a definition of that word, the trial court should have provided it. The failure to do so was reversible error. Defendant's conviction for forcible sodomy is therefore reversed, and that cause is remanded for a new trial.

## III.

### THE JUROR'S AFFIDAVIT

After the jury had returned its verdict in this case, defendant moved for a new trial. So far as pertinent to this appeal, that motion questioned whether the jury had improperly arrived at its verdict. Defendant submitted the affidavit of Judy Couey, a juror at the trial, which stated, *inter alia*, that the other jurors told her the jury must reach a unanimous decision, that in her opinion defendant was not guilty, and that she concurred in the verdict reached by the majority only because she believed that her only alternative was to convince all the other jurors that she was right. The state submitted opposing affidavits of two other jurors.

Defendant assigns error to the trial court's refusal to admit the Couey affidavit and to his denial of defendant's motion for a new trial. Rule 41 of the Utah Rules of Evidence states:

Upon an inquiry as to the validity of a verdict or an indictment *no evidence shall be received* to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined, *except as provided in Rule 59, U.R.C.P.* [Emphasis added.]

Rule 59 of the Utah Rules of Civil Procedure states in pertinent part:

(a) *Grounds.* Subject to the provisions of Rule 61 [governing harmless error], a new trial may be granted . . . for any of the following causes; . . .

\*　　\*　　\*　　\*　　\*　　\*

(2) Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by resort to *a determination by chance or as a result of bribery,* such misconduct may be proved by the affidavit of any one of the jurors. [Emphasis added.]

■ Since the affidavit under consideration here did not allege that the verdict had been determined "by chance or as a result of bribery," the trial court properly refused to receive the affidavit into evidence. Utah Rules of Evidence, Rule 41; U.R.C.P., Rule 59(a)(2); *Johnson v. Simons*, Utah, 551 P.2d 515 (1976); *Hathaway v. Marx*, 21 Utah 2d 33, 439 P.2d 850 (1968); *Smith v. Barnett*, 17 Utah 2d 240, 408 P.2d 709 (1965); *Wheat v. Denver & R.G.W.R. Co.*, 122 Utah 418, 250 P.2d 932 (1952).[11]

The former § 77–38–3, now superceded by the current § 77–35–24 but in force at the time of this trial, states other circumstances where a trial court can grant a new trial in a criminal case:

When a verdict or decision has been rendered against the defendant the court

---

10. *State v. Nicholson*, Utah, 585 P.2d 60, 63 (1978).

11. If the affidavit had alleged misconduct of the type specified in Rule 59(a)(2), the court could have received it, along with other evidence on the issue of jury misconduct, and granted or denied the motion based on its weighing of the evidence.

may, upon his application, grant a new trial in the following cases only:

\* \* \* \* \* \*

(4) When the verdict has been determined by lot *or by any means other than a fair expression of opinion on the part of all the jurors.* [Emphasis added.]

The Couey affidavit states that "I did not feel that I could freely and fairly discuss with my fellow jurors the evidence and the deductions to be drawn therefrom." No court can ensure that, in the give and take of lively jury deliberations, every juror's opinion will be politely heard. We cannot referee the deliberative process. An affidavit alleging verdict by chance, bribery, or the like would present a different case, but the affidavit under consideration here contains no suggestion that the verdict was arrived at by a means other than the "fair expression of opinion on the part of all the jurors."

Nor would Couey's allegation that she misunderstood the rule of law pertinent to unanimity, even if proved, compel the court to grant a new trial where, as here, the jury had been properly instructed on that point. *Johnson v. Simons, supra; Ostertag v. LaMont,* 9 Utah 2d 130, 339 P.2d 1022 (1959). In *Johnson v. Simons,* 551 P.2d at 516, this Court refused to grant a new trial despite the submission of

affidavits from jurors who sat on the case which would indicate that the jury were confused as to the applicable law as enunciated by the court in its instructions, or that they disregarded the law in arriving at a verdict.

The rule that the court will ordinarily not entertain juror affidavits attempting to undermine the integrity of a verdict is of long standing and supported by the clear weight of authority. See ABA, *Standards Relating to Trial by Jury* 166–167 (Approved Draft, 1968); *Wigmore on Evidence,* Vol. VIII, §§ 2348, 2349 (McNaughton rev. 1961). The Supreme Court of the Territory of Utah stated in *People v. Flynn,* 7 Utah 378, 384, 26 P. 1114, 1116 (1891):

It is well settled that affidavits of jurors will not be received to impeach or question their verdict, nor to show the grounds upon which it was rendered, nor to show their misunderstanding of fact or law, nor that they misunderstood the charge of the court, or the effect of their verdict, nor their opinions, surmises, and processes of reasoning in arriving at a verdict.

More recently, this Court has stated, "Such post mortems would be productive of no end of mischief and render service as a juror unbearable." *Wheat v. Denver & R.G.W.R. Co.,* 122 Utah at 428, 250 P.2d 932. To overturn a jury verdict on the kinds of subjective grounds suggested by the juror's affidavit here would be "to open the jury room to the importunities and appliances of parties and their attorneys, and, of course, thereby to unsettle verdicts and destroy their sanctity and conclusiveness." *Wright v. Illinois & Mississippi Tel. Co.,* 20 Iowa 195, 211 (1866).

The judgment of the district court is affirmed as to the convictions for aggravated sexual assault and kidnaping. The conviction for forcible sodomy is reversed and remanded for a new trial. *So ordered.*

HALL, C. J., and STEWART and HOWE, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.