**STATE of Utah, Plaintiff and Appellee,**

v.

**Kenneth SOUZA, Defendant and Appellant.**

**No. 910588–CA.**

Court of Appeals of Utah.

Feb. 3, 1993.

Anthony J. Famulary, Provo, for defendant-appellant.

Jan Graham, Atty. Gen. and Marian Decker, Asst. Atty. Gen., Salt Lake City, for plaintiff-appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Kenneth Dwayne Souza appeals the jury verdict finding him guilty of supplying alcohol to minors in violation of Utah Code Annotated section 32A–12–203 (1991). On appeal, defendant claims that his conviction should be reversed because the State did not present sufficient evidence to prove beyond a reasonable doubt each element of the offense charged. We affirm defendant's conviction.

## BACKGROUND

The charges against defendant resulted from an incident on August 14, 1990, when he, accompanied in his mini van by co-worker, Richard Foster[1], picked up two minor girls and allegedly "supplied" them with alcoholic beverages. Defendant and Foster, both construction workers, had chatted with the girls, Mandy Reyes, aged fifteen, and Mandy Morris, aged fourteen, in the Three Legged Dog Bar in Myton, Utah. The girls told the men that they intended to be at Mandy Reyes's house about ten minutes after leaving the bar. The girls went to the Reyes home and checked in with Mandy's mother before leaving for a short walk to "ghost town," an abandoned convenience store. While the girls were walking, defendant and Foster pulled alongside them and followed them. When the girls stopped and spoke with the men, Foster grabbed each girl in turn by the left hand and pulled them into the back seat of the van. The girls claimed to have resisted, but expressed no real concern at that time because they "didn't know if it was like a major thing to be worried about at that point."

Once they were inside the van, the girls described feeling that they had lost control of the encounter. They claimed to have responded to the men with a mixture of resistance and compliance. While defendant drove the van around Duchesne County, the girls said that Foster kept his hand on the lock and told the girls that they could only leave the van by jumping out.

The girls both testified that defendant and Foster had two cases of beer between the front seats of the van which they offered to the girls several times. Both girls stated that they originally refused the

---

1. Defendant and Foster were tried separately.

beer, eventually drank one, and later hid the beer offered to them in the seats. Mandy Reyes testified that each man handed a beer to one of them; Mandy Morris testified that Foster handed the beer to them and that defendant "appear[ed] to be going along with that."

During the course of the incident, defendant and Foster allowed the girls to drive the van, insisting that they follow the men's directions. They went both to defendant's house and the trailer where Foster intended to live. The girls followed the men into both places and, in fact, carried the beer into defendant's home. The girls alleged that the men made sexual advances throughout the incident, which they managed to repel. After leaving the trailer, the girls insisted they needed to go home because no one knew where they were. Eventually, they were able to escape by running to a school yard and hiding there before returning to the Reyes' home.

As a result of the incident, defendant was charged with supplying alcoholic beverages to minors, a misdemeanor. The State also prosecuted defendant for forcible sexual abuse and kidnapping, second degree felonies. After the evidence had been submitted for jury deliberation, the jury sent a note to the trial court requesting clarification of the instruction relating to the supplying alcohol to minors charge. Their request read: "Instruction number 9. Need clarification on issue number 1. What is the definition of 'furnish or supply'? If it's in the vehicle, does that mean it's supplied?" After discussion with counsel for both parties, the court elected not to respond to the portion of the question about the vehicle but to submit to the jury both *Black's Law Dictionary* and *Webster's Collegiate Dictionary* with the questioned words marked in each volume. Defendant's counsel objected to the trial court's submission of the legal dictionary, because its definition of "furnish" included a reference to liquor laws stating: "As used in the liquor laws, furnish means to provide in any way."

The jury accepted the dictionaries and asked for no further clarification before returning a guilty verdict only for the misdemeanor of supplying alcohol to minors. The court then fined defendant $250 and sentenced him to one year in jail, suspended on the condition that he successfully complete twelve months of probation. Defendant appeals his conviction.

## ANALYSIS

Defendant challenges the sufficiency of the evidence upon which the jury convicted him of supplying alcohol to a minor in violation of Utah Code Annotated section 32A–12–203 (1991). At the time of his conviction, the controlling language of that statute read: "A person may not sell, offer to sell, or *otherwise furnish or supply* any alcoholic beverage or product to any person under the age of 21 years." *Id.* at 32A–12–203(1) (emphasis added). By claiming that his actions did not constitute "furnishing or supplying," defendant focuses his appeal on the meaning of that phrase, the same phrase which generated the jury's questions. Therefore, once we resolve the threshold issue of the statutory meaning of "furnish or supply," we can evaluate both the adequacy of the trial court's response to the jury's request for a definition of these words and the sufficiency of the evidence to support a conviction for the defined activity.

### Definition of Supply or Furnish

 Defendant argues that, contrary to instructions provided to the jury, a conviction for "furnishing or supplying" alcohol to minors in violation of the Utah statute, requires the physical act of giving liquor to a minor. Because Mandy Morris testified defendant did not hand a beer to the girls, the jury could, according to defendant, have acquitted defendant if they had been properly instructed and believed only Mandy Morris and not Mandy Reyes. Defendant's appeal, therefore, turns on the meaning of the statutory phrase "other-

wise furnish or supply". Because interpretation of statutory language is a question of law, we review the definition provided in the jury instruction, as supplemented by the offered dictionaries[2], for correction of error without affording deference to the decision of the trial court. *State v. James*, 819 P.2d 781, 796 (Utah 1991). In interpreting the critical words, we follow basic principles of statutory construction. First, terms of related code provisions should be construed in a harmonious fashion. *Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 471–72 (Utah 1989). Second, statutory terms should be interpreted and applied according to their commonly accepted meaning unless the ordinary meaning of the term results in an application that is either "unreasonably confused, inoperable, [ ]or in blatant contradiction of the express purpose of the statute." *Morton Int'l., Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991) (discussing *Webster's New Collegiate Dictionary* as a source for usual meanings of statutory terms). Third, " '[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with its intent and purpose.' " *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 (Utah 1991) (quoting *Osuala v. Aetna Life and Casualty*, 608 P.2d 242, 243 (Utah 1980)).

Although defendant correctly states that Utah courts have not construed the words "supply" and "furnish" in the context of the criminal alcohol control statute at issue,

we note that Utah has addressed a sufficiency of evidence challenge directed at comparable language in the civil statute referred to as the "Dram Shop Act," also found in the "Alcoholic Beverage Control Act." *See Reeves v. Gentile*, 813 P.2d 111 (Utah 1991).[3] In *Reeves*, the plaintiff, an injured pedestrian, sued the defendant bar owner for injuries sustained when the plaintiff was "struck by a car driven by a patron of defendant's bar." *Id.* at 113. Because testimony about the purchase of the alcohol was in dispute, the *Reeves* court had to consider the sufficiency of the evidence that defendant's bar had "provided" beer to the patron when he was already intoxicated. Evidence indicated that the patron had split two pitchers of beer with friends while at defendant's bar and that bar personnel may have furnished glasses to the drinking parties. *Id.* The Utah Supreme Court decided that, based on this evidence, in conjunction with the undisputed fact that the patron consumed beer purchased on the premises, "it was not unreasonable for the jury to find by a preponderance of the evidence that [the bar] *provided* beer" to the intoxicated patron. *Id.* at 115 (emphasis added).

While this civil decision interpreting a companion alcohol control statute does not dispose of the issue before this court, it is instructive. Definitionally, "provide" appears substantially equivalent to "furnish or supply" as each word is used as a definition or synonym of the others. *See Webster's Third New International Dictionary* 923, 1827, 2297 (3rd ed. 1986); *Black's Law Dictionary* 608, 1102, 1291

---

2. Both counsel acquiesced in supplying one or more dictionaries to the jury. Appellant does not challenge the court's decision to provide the jury with dictionaries as a means of responding to its request for clarification. We accordingly have no occasion to address the propriety or advisability of such a practice.

3. In *Reeves*, the court construed the language of Utah's Dram Shop Act, which states in relevant part:

(1) Any person who directly gives, sells, or *otherwise provides* liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to a person:

(a) who is under the age of 21 years or
(b) who is apparently under the influence of intoxicating alcoholic beverages or products or drugs

...

is liable for injuries in person, property, or means of support to any third person, ... resulting from the intoxication.

*Id.* at 114 (quoting Utah Code Ann. § 32A–14–1(1) (Supp.1986) (emphasis added)) (current version at Utah Code Ann. § 32A–14–101 (1991)).

(5th ed. 1979). The Utah Supreme Court's evaluation of facts indicative of "providing" is, therefore, relevant to our interpretation of "furnish or supply." The supreme court affirmed the defendant bar owner's liability for "providing" alcohol in the absence of any testimony that the bartender actually served, transferred, handed, or offered liquor directly to the intoxicated patron who caused the accident. *Reeves*, 813 P.2d at 113. Thus, in the civil context, the supreme court did not require the actual physical transfer of the alcoholic beverage from the provider to the consumer.

Defendant, on the other hand, argues that because Utah courts have not yet construed the language of the furnishing alcohol to minors criminal statute, this court should adopt the interpretation of "furnish" in a comparable California statute requiring an "affirmative act" such as supplying, giving or providing alcohol to a minor.[4] *See Sagadin v. Ripper*, 175 Cal. App.3d 1141, 221 Cal.Rptr. 675, 684 (1985). Although defendant focuses his argument on the phrase "affirmative act," the *Sagadin* court actually based its concept of culpability on the distinction between nonfeasance, which does not violate the statutory prohibition, and culpable misfeasance. *Id.* To illustrate nonfeasance, the court cited cases where the prosecution had failed to satisfactorily specify actions constituting culpable "furnishing" conduct including: (1) merely supplying a *host* with alcohol, (2) providing a room, even with knowledge that alcohol would be consumed, (3) contributing to a common fund for the purchase of alcohol with no further control over its consumption, and (4) failing to stop another from drinking in one's presence. *Id.*

The California court then compared these examples of nonfeasance to the individual actions of the three individual defendants, members of a family in whose home alcohol was consumed by minors later injured in an automobile crash. *Id.* 221 Cal.Rptr. at 684–85. In the California civil action, plaintiffs had predicated their claim of the defendant family's negligence on their violation of the state penal statute.[5] *Id.* at 684. The family defended by arguing that plaintiffs failed to prove that they had violated the criminal statute because "there was no showing that they 'furnished' alcohol." *Id.*

After evaluating the involvement of the mother against the requirement of an "affirmative act," the *Sagadin* court reversed the trial court's finding of liability on her part. *Id.* at 685. Despite her knowledge that minors would be drinking, the mother's involvement in the alcohol consumption incident was not culpable because it was limited to assisting with decorations and food and providing room for a party which she did not attend. *Id.*

The *Sagadin* court, on the other hand, upheld the liability of the two family members whom it deemed to have "sufficiently participated in the stream of beer availability for it to be said [they] *furnished* the beer." *Id.* at 684–85 (emphasis added). The court found an "affirmative act" in the totality of the son's actions: (1) contributing to the common fund for the purchase of beer and directing another to pick it up; and (2) attaching the beer keg to the dispenser thereby facilitating access to the beer. *Id.* at 684. The court also upheld the conviction of the father based on a

4. The California court discussed California Business and Professional Code section 25658(a) (West 1978) which provides in pertinent part: "every person who sells, *furnishes* [or] gives ... any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor." *Id.* at 681 (emphasis added).

5. We note that Utah has not yet addressed the issue of common law negligence in the context of a claim against a social host. *Sneddon v.*

*Graham*, 821 P.2d 1185, 1190 n. 2 (Utah App. 1991), *cert. denied*, No. 920042, slip op. at —— (Utah June 19, 1992) 843 P.2d 516 (Table) (Utah 1992) The Utah Supreme Court, however, has adopted the Restatement (Second) of Torts § 315 stating: "that no duty can be found to protect another from harm unless and until a special relationship exists between the parties." *Id.* (discussing *Beach v. University of Utah*, 726 P.2d 413 (Utah 1986)).

reasonable inference of authorization from testimony that he had told his son that "if parental beer was used, it would have to be replaced." *Id.* at 685.

> Such an authorization constitutes the requisite affirmative act as a matter of law. In order to furnish an alcoholic beverage the offender *need not pour the drink;* it is sufficient if, *having control* of the alcohol, the defendant *takes some affirmative step* to supply it to the drinker. By authorizing his son to supply beer to the underage partygoers, [the father's] act was one of misfeasance rather than nonfeasance; his affirmative conduct created the risk.

*Id.* (emphasis added). *Sagadin*'s analysis of misfeasance, therefore, does not support defendant's argument that the "affirmative act" required need be a physical act of handing the liquor to a minor.

Other jurisdictions have also upheld criminal convictions under statutes protecting minors from access to alcohol in the face of arguments similar to those of defendant. The defendants in those cases attempted to avoid conviction by incorporating the requirement of some physical transfer of the prohibited beverage into the hand of the protected minor. *See State v. Davis*, 244 Iowa 400, 56 N.W.2d 881, 883–84 (1953) (ruling that defendant's pouring his liquor and permitting a minor to take it constituted "supplying" liquor even without his placing the drink in the minor's hand); *State v. Bush*, 93 Idaho 538, 540, 466 P.2d 578, 580 (1970) (holding that placing beer in a position in defendant's car where a minor could take it and intending that he do so constituted "serving or dispensing" alcohol without direct physical transfer of the beer); *State v. Haarde*, 230 N.J.Super. 605, 554 A.2d 872, 874 (1989) (deciding that making his home available and allowing minors to drink his beer in his presence justified the inference "that defendant purposely or knowingly made the alcoholic beverages available" to minors partly because the legislature had intended the statute to discourage underage drinking "by placing more

responsibility on adults"). We follow these precedents in declining to incorporate a requirement of a physical transfer into the Utah definition of "furnish or supply." While we agree that *some* affirmative act is necessary for conviction, a broad range of actions fall within the scope of the protective statute's prohibition. We reject, therefore, defendant's proposition that we narrow the definition of "furnish or supply" as contrary to both related Utah case law and well-reasoned precedent from other jurisdictions.

■ We also note that the prohibition against supplying alcohol to minors expresses a state policy to protect minors as a particular class of people. This protective intent is significant because our supreme court requires that "[i]f there is doubt or uncertainty as to the meaning or application of the provisions of an act, it is appropriate to analyze the act in its entirety, in light of its objective, and to harmonize its provisions in accordance with the legislative intent and purpose." *Osuala v. Aetna Life and Cas.*, 608 P.2d 242, 243 (Utah 1980); *accord State v. Jones*, 735 P.2d 399, 402 (Utah App.1987). Further, relevant commentary specifically discussing statutes proscribing the supplying of liquor to minors suggests that an assessment of the social policy considerations should be a determinative matter in interpreting alleged ambiguity in those statutes. 14 A.L.R.3d 1186, 1187 (1967 & Supp.1992). Thus, the protective nature of the statute also discourages narrowly construing or rigidly defining the proscribed conduct.

We, therefore, conclude that "furnish or supply" as used in Utah Code Annotated section 32A–12–203 requires that defendant: (1) has some measure of *control* over the alcohol in question; (2) *knows* that whatever act he or she undertakes contributes to making alcohol available to minors; and (3) *intends or is reckless to* the fact that minors will accept or consume that alcohol. We note that these criteria are compatible with *Reeves*'s treatment of "providing" liquor in the context of our

Dram Shop Act, the concept of an "affirmative act" in the precedent cited above, and the public policy behind our statute.[6]

We also agree with the *Sagadin* court that a working legal definition of the words "furnish or supply" requires a balance between accomplishing the protective purpose of the statute while preventing inadvertent culpability. The California court accomplished this balance by distinguishing "affirmative acts" from nonfeasance. Requiring misfeasance protects relatively innocent individuals from conviction based on allegations of "furnishing" liquor supported only by evidence of passive involvement such as mere storage of alcohol on private premises. We achieve a similar balance by adopting the above definition, requiring that accused persons must *know* that they were making alcohol which was under their control available to a minor with the *intent or a reasonably inferred expectation* that the minor will accept it.

### Defining Lay Terms for the Jury

■ After the jury in this case had been sequestered for deliberation, it requested clarification of the words "supply or furnish" as used in the trial court's instruction pertaining to the offense of supplying alcohol to minors.[7] The trial court appropriately considered the common meaning of the words in evaluating what response would assist the jury.[8] This consideration was proper because Utah's statutes generally direct that "[w]ords and phrases are to be

construed according to the context and the approved usage of the language." Utah Code Ann. § 68-3-11 (1986). However, where the jury requests the definition of a "term critical to the meaning of a criminal statute," that requested definition becomes a "point of law." *State v. Couch,* 635 P.2d 89, 94 (Utah 1981). The appropriate standard of review for a trial court's response to a question of law is correction of error. *State v. James,* 819 P.2d 781, 796 (Utah 1991) (discussing the standard of review for interpretation of statutory law). Further, because " '[t]he general rule is that an accurate instruction upon the basic elements of an offense is essential,' " failure to provide such an instruction is reversible error that can never be considered harmless. *State v. Jones,* 823 P.2d 1059, 1061 (Utah 1991) (quoting *State v. Roberts,* 711 P.2d 235, 239 (Utah 1985)).

Both defendant and the State correctly cite *Couch* as providing the controlling law in situations where the jury asks the trial court to define words used in jury instructions that normally are not considered to have unique legal meaning. According to the *Couch* decision, although the court usually need not volunteer the definitions of terms of common usage in jury instructions, where the jury requests the instruction, the trial court should provide it. *Couch,* 635 P.2d at 94-95. The *Couch* court reasoned that the rule requiring the trial court to define terms of art should apply equally to "non-technical words of common usage" if the jury signifies that it

---

**6.** This definition is also consistent with the most recent amendment of the statute, effective March 13, 1991, providing: "Except as otherwise provided in Subsection (1), a person who *knowingly* sells, offers to sell, or otherwise furnishes or supplies any alcoholic beverage or product to any person under the age of 21 years is guilty of a class A misdemeanor." Utah Code Ann. § 32A-12-203(2) (Supp.1992) (emphasis added).

**7.** The pertinent instruction set out the elements of the offense as follows:
1. That on or about August 14, 1990, the defendant Kenneth Dwayne Souza, did furnish or supply an alcoholic beverage or product to Mandy Renae Reyes and Mandie [sic]

Morris and/or did encourage or intentionally aid another person to do so.
2. That Mandy Renae Reyes and Mandie [sic] Morris are under the age of 21 years; and
3. That said alcoholic beverage or product was furnished or supplied in Duchesne County and/or Uintah County, State of Utah
4. That said alcoholic beverage [or] product was furnished or supplied intentionally or knowingly.

**8.** It does not necessarily follow that physically delivering two dictionaries to the jury was proper. *See* note 2.

does not understand the meaning of a word that it must apply to arrive at a verdict. *Id.* at 95. Refusal to provide a definition was reversible error in *Couch,* because "[j]urors cannot be considered properly instructed on a criminal statute if they are demonstrably confused about the meaning of the words used in it." *Id.* at 94.

Although the *Couch* holding required the trial court to provide a definition for the jury, it did not describe the nature of a legally sufficient definition of commonly used words. The appellate court did not reach that issue because the trial court did not provide the jury with *any* definition of the term about which they had inquired. *Id.* at 95.

In contrast to the trial court in *Couch,* the trial court in this case carefully considered what response would assist the jury without biasing its determination of the ultimate issue. It requested input from counsel on useful definitions and reviewed, together with counsel, the definitions provided in *Webster's New Collegiate Dictionary* and *Black's Law Dictionary.* The court then decided to send the jury both volumes with the words marked. Defendant's counsel objected to *Black's* definition of "furnish" which was: "[t]o supply, provide or equip, for accomplishment of a particular purpose. As used in the liquor laws, 'furnish' means to provide in any way and includes giving as well as selling." *Black's Law Dictionary* 608 (5th ed. 1979). He claimed that the broad definition in the context of liquor laws was not part of Utah liquor law.

Having reviewed the record, we conclude that, in this particular case, the substantive definitions selected by the trial court to define the lay terms confusing the jury were adequate to supplement the jury instruction. Although defendant's counsel objected to a part of the definition of "furnish" in *Black's,* he expressly agreed to the use of *Webster's* to define both words and to the use of *Black's* with respect to the definition of "supply." [9] This consent confined defendant's objection to the substance of *Black's* definition of "furnish."

■ The substantive adequacy of a supplemental definition supplied to a jury depends upon its effect on the jury instruction it is intended to explain. If a dictionary definition sufficiently clarifies an instruction, it should be considered adequate. In fact, Utah appellate courts have themselves compared dictionary definitions to jury instructions to evaluate the clarity of the information given to the jury. *See Penelko, Inc. v. John Price Assocs., Inc.,* 642 P.2d 1229, 1234 (Utah 1982).[10]

■ In this case, we find that the definitions of "furnish" and "supply" in both the dictionaries provided to the jury clarify the instruction on the supplying alcohol to minors charge rather than prejudice defendant's rights. *See Webster's* at 499, 1186; *Black's* at 608, 1291. In particular, the broad definition of "furnish" in *Black's Law Dictionary* specifically referring to the context of alcohol distribution comports with the definition previously discussed without prejudicing any right of defendant.

We find, further, that the definitions in the two volumes are not inconsistent, in spite of the slight differences in their language, and both adequately define the statutory words. In fact, the totality of the words used in the definitions covers the

---

9. *Webster's* defines the word "furnish" as "1: to provide with what is needed; ... 2: supply, give," *Webster's Ninth New Collegiate Dictionary* at 499, and defines "supply" as "1: to add as a supplement 2a: to provide for ... b: to make available for use: Provide," *id.* at 1186. *Black's* defines "supply" as: "[t]o furnish with what is wanted; ... and the act of furnishing with what is wanted." *Black's Law Dictionary* at 1291.

10. We note that even if a dictionary were provided to the jury through an improper procedure, only if its definition of questioned words "resulted in prejudice to any substantial right of a defendant," must the court reverse the resulting jury decision. *State v. Donald,* 90 Utah 533, 63 P.2d 246, 248 (Utah 1936); *Hillier v. Lamborn,* 740 P.2d 300, 304 (Utah App.), *cert. denied,* 765 P.2d 1277 (Utah 1987).

spectrum of normal usage of the questioned words. Thus, we find that the trial court's jury instruction, supplemented by the selected definitions, satisfies the trial court's duty under *Couch* to provide the jury with a definition of confusing lay terms in a jury instruction.

### Sufficiency of the Evidence

 Defendant asserts that the evidence presented by the State was insufficient to convince the jury beyond a reasonable doubt that he violated Utah Code Annotated section 32A–12–203 (1991). He argues that his conviction should be reversed as the jury must have entertained a reasonable doubt as to whether his participation in the drinking incident constituted "furnishing or supplying" alcohol to a minor. Because an appellate court owes broad deference to the fact finder, its power to review a jury verdict challenged on grounds of insufficient evidence is limited. *State v. James*, 819 P.2d 781, 784 (Utah 1991); *State v. Scheel*, 823 P.2d 470, 472 (Utah App.1991). The court reviews the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the jury's verdict and reverses only if that evidence is so " 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he ... was convicted.' " *Scheel*, 823 P.2d at 472 (citations omitted).

Having reviewed the record in light of the definition of "furnish" and "supply," we find that defendant's challenge to the sufficiency of the evidence fails. Testimony demonstrated that the beer between the front seats of the mini-van was jointly consumed and controlled by both defendant and Foster. Both men offered the beer to the girls several times. Although Mandy Morris testified that Foster actually handed them the beer, and defendant "appear[ed] to be going along with that," Mandy Reyes testified that defendant handed a beer to one of them and Foster handed a beer to the other. Both men continued to offer beer to the girls who hid the beer between the seats.

Taken as a whole, we note that defendant's involvement in the incident contributed to "the stream of beer availability" for minors in a manner at least comparable to the culpable actions of the defendants in the California case. Defendant authorized the minors to consume alcohol in that he had control of the alcohol and took some affirmative step toward supplying it to the underage drinkers. Although the relevant evidence produced at trial was not extensive and appeared mildly contradictory, it was not so inconclusive or inherently improbable that a jury must have entertained doubt as to whether defendant "furnished or supplied" alcohol to minors.

### Conclusion

To be convicted of "furnishing or supplying" alcohol under Utah Code Annotated section 32A–12–203 (1991) requires that an accused have some *control* of that alcohol, *know* that he or she was making it available to a minor, and *intend or be reckless to the fact* that the minor would accept it. Having established this criteria, we find that the jury instruction on the offense, as supplemented by the dictionary definitions, adequately and accurately described the offense for the jury. We also find that in light of this criteria, the evidence presented at trial was sufficient to support defendant's conviction of "furnishing or supplying" alcohol to minors.

BILLINGS and ORME, JJ., concur.