Harry J. CHRISTIANSEN, Plaintiff and Appellant,

v.

UTAH TRANSIT AUTHORITY and John G. Miller, Defendants and Respondents.

No. 17250.

Supreme Court of Utah.

June 15, 1982.

Edward T. Wells, David K. Robinson, Salt Lake City, for plaintiff and appellant.

Timothy R. Hanson, Salt Lake City, for defendants and respondents.

HOWE, Justice:

This suit arose from a traffic accident between an automobile driven by plaintiff Harry J. Christiansen and a bus owned by defendant Utah Transit Authority (UTA) and driven by defendant John G. Miller. The jury found that the plaintiff had sustained special damages (medical expenses and lost wages) of $7700.00 and general damages (pain and suffering) of $5000.00. The jury also found the plaintiff to have been 70% negligent and UTA and Miller to have been 30% negligent. Because § 78–27–37, U.C.A. 1953 bars recovery by a plaintiff when his negligence is equal to or greater than that of the defendants, the court entered a judgment of "no cause of action" in favor of the defendants. Plaintiff brings this appeal seeking reversal of the judgment, a new trial and an order allowing him to amend his complaint to add additional defendants and to seek punitive damages.

Christiansen contends that the jury's verdict was the result of sympathy, bias, passion and prejudice and was contrary to the clear weight of the evidence. He also asserts that the trial court erred in refusing to grant him a default judgment against Miller when Miller failed to appear at the trial; in refusing to give the jury one of his requested instructions but instead giving instructions to which he objected; in refusing to instruct the jury on the consequences of their apportionment of negligence; and in refusing to grant his motion to amend the complaint in order to plead wilful and wanton negligence and seek punitive damages.

At about 6:30 in the evening of January 17, 1978 Miller was travelling southbound in the righthand lane on 7th East in Salt Lake City amid moderately heavy traffic. Christiansen was also travelling in the same direction in a middle lane and as he approached a red light at the 2100 South intersection, he changed into the righthand lane ahead of the bus and came to a stop. Miller applied his brakes but ran into the rear of Christiansen's vehicle. Christiansen testified that he turned into the right lane between one-half block to one block before the intersection, and that he continued in that lane until he stopped about ten feet behind another bus which had stopped at the 2100 South bus stop located 94 feet north of the intersection. He claimed that the bus which hit him was about one-half block behind him when he pulled into the right lane, and that he had been stopped for more than a minute when it struck him.

Miller's version of the facts was that Christiansen pulled into the right lane only 25 to 30 feet ahead of the bus. Miller thereupon applied the brakes in an attempt to slow down and increase the distance between the bus and the car. He testified that he did not apply the brakes with much force because that would have thrown passengers out of their seats. Suddenly the brake lights of the Christiansen vehicle came on and the vehicle made a "quick stop" approximately 50 feet behind the bus which was stopped ahead at the 2100 South bus stop. Christiansen explained that he did not stop close to the bus ahead of him because he did not want to be in its exhaust. Miller attempted to make a "panic stop" but hit the Christiansen car forcing it forward 40 feet, but not far enough for it to hit the bus which had stopped ahead.

Christiansen hit his head as he was thrown forward. Miller went to Christiansen's car window, talked with him, and then radioed a UTA supervisor to come to the scene of the accident. After talking with the UTA supervisor and exchanging information with Miller, Christiansen drove his automobile to his home. The police were not called and they made no investigation. At the trial Christiansen claimed that he had been injured but that he had been too dazed to mention his injury, either at the scene of the accident or later when he went to the UTA offices to report that he had noticed additional damage to his vehicle.

Christiansen and Miller differed in their recollection of some of the details of the accident and subsequent conversation. However, at the trial Christiansen introduced Miller's deposition which he relied upon, particularly Miller's statement there-

in that the brakes on the bus were "spongy." This supported Christiansen's theory that the accident occurred as a result of UTA's negligence in allowing the bus on the road with improperly working brakes and that Miller was negligent in following too closely. Although Miller did not appear at trial (he had left UTA's employ), he was represented by counsel for UTA who defended the safe condition of the brakes and Miller's actions. UTA's theory of the case was that Christiansen's manuever of pulling in front of the bus and stopping abruptly was negligent under the circumstances and the cause of the accident. There is testimony in the record which supports both theories.

 Christiansen contends that the verdict is contrary to the clear weight of the evidence. Our scope of review in a law case does not permit us to determine that question. The Constitution of Utah, Art. VIII, Sec. 9 limits our review in cases at law to questions of law and thus we will not disturb a jury verdict on a factual question which is supported by any competent evidence. *Uinta Pipeline Corp. v. White Superior Co.*, Utah, 546 P.2d 885 (1976); *Nelson v. Peterson*, Utah, 542 P.2d 1075 (1975); *Weber Basin Water Conservancy District v. Skeen*, 8 Utah 2d 79, 328 P.2d 730 (1958). That test is met here. Also, Christiansen's contention that the verdict was a result of sympathy, bias, passion and prejudice must fail. He has not shown us any evidence of such feelings and there is nothing about the verdict itself which suggests that it was the product of such feelings.

 Christiansen's contention that it was error to refuse him a default judgment against Miller when he failed to appear at trial is without merit also. First, Miller was represented by UTA counsel at trial. The case was tried on the merits without any objection by Christiansen. Secondly, Christiansen chose to move for admission of Miller's deposition in lieu of his appearance. He did not move for a continuance of the trial based upon having been misled by UTA that Miller would be there. Nor did he establish that he had relied upon assur-

ances by UTA of his appearance. Thirdly, Christiansen's own drafting of the "Motion to Permit Use of Defendant Miller's Deposition in Lieu of Defendant's Appearance" suggests that he was not misled nor prevented from attempting to have him testify at trial. The motion explains that UTA notified Christiansen of the difficulty being experienced in obtaining Miller's cooperation and UTA's attempt but inability to subpoena him for trial. Finally, Christiansen points to no precedent that would justify awarding him a default judgment. Rather, it appears that in carrying the burden of his case, Christiansen simply chose the strategy of using Miller's deposition at trial and failed in that strategy. This does not constitute error.

Christiansen next contends it was error for the court to refuse to give the jury one of his requested instructions and to instead give instructions to which he objected. The court refused to give Christiansen's Requested Instruction No. Eight:

> If you should find that it was within the power of the parties to produce stronger and more satisfactory evidence than that which was offered on a material point, you may view with distrust any weaker and less satisfactory evidence actually offered by him on that point; unless such failure is satisfactorily explained.

Christiansen asserts that the court's refusal to give this instruction precluded him from arguing to the jury that UTA's failure to produce Miller, his supervisor on the date of the accident, and the mechanic who repaired the brakes of the bus following the accident, all witnesses with first hand knowledge, should be viewed critically.

 However, neither the absence of Requested Instruction No. 8 nor the instructions which were given precluded Christiansen from arguing to the jury how it should view the evidence. Furthermore, it was Christiansen's burden as plaintiff to prove his basis for recovery. The witnesses which Christiansen claims UTA should have called apparently would have bolstered Christiansen's case, but UTA had no obligation to call its personnel and former personnel as

witnesses for that purpose. Judging by the verdict, it would appear that UTA did produce sufficient satisfactory evidence to support its defense. Also, we have held that where the issues are clearly set out in the instructions which were given, failure to have given some of the requested instructions is not reversible error. *Wilson v. Gardner*, 10 Utah 2d 89, 348 P.2d 931 (1960). Here the issues of the case were sufficiently dealt with in the instructions which were given. Therefore, the absence of Instruction No. 8 was not error.

The instructions which the court gave over Christiansen's objection were excepted to only in part. He now contends, however, that the last paragraph of Instruction No. 21 which was patterned after § 41–6–69, U.C.A. 1953 which prohibits a driver from suddenly stopping or decreasing his speed without first giving an appropriate signal was unnecessary, misleading and inappropriate here since the drivers of both vehicles had a duty to stop for the red light at the approaching intersection and no signal was required of the plaintiff to notify Miller of that intention. Furthermore, plaintiff argues that if a signal by him was required, his actuation of the brake lights sufficed.

▮ The difficulty with this argument is that Christiansen bases it upon the assumption that his interpretation of the facts is the only one possible. Whether the presence of the red light required Christiansen to stop gradually as he claims or whether Christiansen's stop was sudden, some distance behind the first bus and 144 feet north of the intersection and therefore required a signal, were questions for the jury. The jury was entitled to receive instructions based upon both theories. In isolation, this segment of the instructions does represent only UTA's interpretation of the facts. However, viewed in the context of the rest of Instruction No. 21 and with all of the other instructions, there was no error in this regard. See *Black v. McKnight*, Utah, 562 P.2d 621 (1977) which held that jury instructions must be viewed as a whole rather than in isolated segments.

Instruction No. 22 is a statement of the law concerning the obligation of a driver to maintain a reasonable lookout to the rear. Christiansen maintains that this instruction is superfluous since Instruction No. 21 already stated that the plaintiff had a duty to use due care in operating his vehicle and because "no evidence in the record . . . would support a violation of Mr. Christiansen of any duties he may have had to the following vehicle."

▮ A review of the record indicates that there is evidence of a violation of Christiansen's duty to the vehicle following him. Again, Christiansen erroneously assumes that there was only one conclusion to be drawn from the evidence, i.e., that "the collision was caused by faulty brakes." The rule is that defendants, as well as plaintiffs, are entitled to instructions supporting their theory of the case. *Black v. McKnight*, supra. Additionally, the duty to maintain a proper lookout is a more specific statement of duty than the duty to use due care. In any event, if this instruction were considered a duplication (as was argued), such a duplication is not reversible error. *Woodhouse v. Johnson*, 20 Utah 2d 210, 436 P.2d 442 (1968); *Johnson v. Cornwall Warehouse Co.*, 16 Utah 2d 186, 398 P.2d 24 (1965).

▮ The same is true of any duplication there may have been in Instruction No. 23; it is not reversible error. Christiansen also asserts that paragraph three of Instruction No. 23 was an incorrect statement of the law. Instruction No. 23 requires that a driver must indicate beforehand that he is about to stop or decrease speed. However, as that paragraph accurately reflects, under certain circumstances the simultaneous application of brakes and the actuation of brake lights may fall short of the statutory requirement of giving an appropriate signal. *Stapley v. Salt Lake City Lines*, 18 Utah 2d 214, 418 P.2d 779 (1966); *United States v. First Security Bank of Utah*, 208 F.2d 424 (10th Cir., 1953). In a maneuver of pulling in front of another vehicle and stopping abruptly, for instance, (which was UTA's theory of the case) the application of brakes and resultant actuation of brake

lights provides no warning since the brake light signal is simultaneous with the vehicle's sudden decrease in speed. The instruction, therefore, was not an incorrect statement of the law. The fact that a mechanical signal may be a sufficient signal under other circumstances, as paragraph two of the instruction indicates, does not render the instruction erroneous.

■ Christiansen's final objection to the instructions which were given rests again only upon his own interpretation of the facts. The "sudden peril instruction" (Instruction No. 24) stated that a person who is without negligence on his part and is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others, is not expected nor required to use the same judgment and prudence that may be required of him in calmer and more deliberate moments. Christiansen suggests that this instruction was error because "it is uncontroverted that the bus driver followed the Christiansen vehicle *for some period of time* prior to the time that the Christiansen vehicle came to its stop." [Emphasis added.] However, Miller's testimony was that Christiansen was in the right lane only two or three seconds before he stopped abruptly. During that time Miller was attempting to slow down to increase the distance between the car and the bus without throwing bus passengers forward by stopping abruptly. In his own words, Miller "panic stopped" when the automobile's brake lights went on. This testimony suggests that the sudden peril instruction was not erroneously given; it was justified both by some of the evidence and by one of the theories (UTA's) argued in the case. See *Jaeger v. Estep*, 235 Or. 212, 384 P.2d 175 (1963); *Grapp v. Peterson*, 25 Wash.2d 44, 168 P.2d 400 (1946).

Christiansen cites *Solt v. Godfrey*, 25 Utah 2d 210, 479 P.2d 474 (1971), in support of the proposition that the court's instructions entitled him to reversal. However, *Solt* was a personal injury case where an inattentive motorist struck an infant who had chased a ball into a street in a residential area. The court held that the giving of defendant's sudden peril instruction and the failure to give plaintiff's requested instruction on looking but not seeing was reversible error. The reasoning behind the decision was that a driver is charged with the duty of seeing persons he would have seen had he been exercising reasonable care and that one who is confronted with an emergency occasioned by his own neglect is not entitled to a sudden peril instruction.

The facts of *Solt* have no parallel to the case before us. There is evidence that the emergency which confronted Miller was not occasioned by any inattentiveness on his part and that he did not fail to see what was there to be seen. The instructions which were given fairly represented UTA's theory of the case. Those instructions taken together with all of the instructions as a whole were fair to both sides. There was, therefore, no error committed by the trial court in the jury instructions.

■ Christiansen's argument that the court erred in refusing to instruct the jury on the consequences of their apportionment of negligence may not be considered by us on the merits since he failed to raise the point in the trial court. *Lamkin v. Lynch*, Utah, 600 P.2d 530 (1979). His own withdrawal of a requested instruction on the subject precludes us from considering the question here.

■ Christiansen's final argument is that the trial court erred by refusing to amend the complaint to allow him to plead wilful and wanton negligence on the part of UTA and to seek punitive damages. The trial court may exercise its discretion with respect to whether a party is allowed to amend its complaint. *Davis Stock Co. v. Hill*, 2 Utah 2d 20, 268 P.2d 988 (1954). In the order denying this motion the trial court stated:

> Upon reviewing the basis for the request for leave to amend and being advised by counsel for the plaintiff that the plaintiff [Christiansen] could not in good faith allege malice in support of his claim for punitive damages and the Court, being

fully advised in the premises and good cause otherwise appearing, it is hereby ordered that the plaintiff's motion to amend his complaint to add a count for punitive damages and to add additional defendants is denied.

The court's reasoning does not indicate an abuse of its discretion.

Judgment affirmed. Costs to respondent.

HALL, C. J., and STEWART, OAKS and DURHAM, JJ.