Karen HILLIER, Plaintiff and Respondent,

v.

William J. LAMBORN, Defendant and Appellant.

No. 860030–CA.

Court of Appeals of Utah.

Aug. 5, 1987.

Rehearing Denied Aug. 28, 1987.

Gary B. Ferguson, Michael K. Mohrman, Richards, Brandt, Miller & Nelson, Salt Lake City, for defendant and appellant.

Stephen G. Morgan, Mark L. Anderson, Salt Lake City, for plaintiff and respondent.

Before GREENWOOD, BENCH and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff commenced this action against defendant to recover for personal injury and property damage she suffered as a result of an automobile accident with defendant. The jury found defendant 80% negligent, plaintiff 20% negligent and awarded plaintiff $221,209.41 in damages. Defendant appeals seeking a new trial or a reduction in the damages.

At about 8:30 a.m. on November 13, 1982, plaintiff was driving southbound on I–15 near Farmington, Utah when defendant, who was driving south slowly on the right shoulder of the road, pulled out in front of her causing her to swerve sharply and her car to roll over. Plaintiff was thrown from the vehicle and suffered extensive injuries.

The jury was instructed, over defendant's objection, on the sudden emergency doctrine which states in part that a person who, without negligence on his part, is suddenly confronted with peril is not required to use the same judgment required in calmer moments. The court, however, refused to submit defendant's seat belt instruction to the jury and ruled that defendant would not be allowed to present any evidence regarding seat belts. During jury deliberations one juror requested and received a dictionary from the bailiff for the purpose of defining "proximate" in order to understand "proximate cause." After the jury returned its verdict a judgment was entered. This appeal followed the court's denial of defendant's motion for a new trial or, alternatively, reduction of damages.

On appeal defendant claims the trial court erred in: 1) submitting the sudden

emergency instruction to the jury; 2) disallowing the seat belt instruction and evidence; 3) failing to grant a new trial due to the juror's use of a dictionary to define "proximate"; and 4) denying the motion for a new trial on the basis that the jury verdict was unreasonable and based on passion, prejudice and insufficient evidence.

## I

Defendant first contends that the trial court erred in instructing the jury on the sudden emergency doctrine. Defendant argues the sudden emergency instruction was inappropriate because it requires plaintiff to be free of negligence. The instruction stated:

> A person, who without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to himself or to others is not expected nor required to use the same judgment and prudence that may be required of him in calmer and more deliberate moments.

> In such a situation, his duty is to exercise only the degree of care which an ordinary prudent person would exercise under the same or similar circumstances. If, at that moment, he exercises such care, he does all the law requires of him, even though in the light of after-events, it might appear that a different choice and manner of action would have been better and safer.

Defendant points out that plaintiff was not negligence free because the jury found her 20% negligent. Defendant also claims that plaintiff was necessarily negligent because she failed to move into the left lane when she first saw defendant's truck on the side of the road and a non-negligent person would have changed lanes.

Plaintiff's theory of the case, on the other hand, was that she was not negligent for failing to anticipate defendant's act of pulling out in front of her. She claimed that defendant should have used his signal and looked behind him before pulling out into the right hand lane. Plaintiff asserts that the sudden emergency instruction was proper because it was consistent with her theory of the case. We agree.

■ The general rule is that a party is entitled to have his theory of the case submitted to the jury. *Watters v. Querry*, 626 P.2d 455, 458 (Utah 1981). The trial court has a duty to "cover the theories and points of law of both parties in its instructions, provided there is competent evidence to support them." *Black v. McKnight*, 562 P.2d 621, 622 (Utah 1977).

The Utah Supreme Court has examined the appropriateness of submitting a sudden emergency instruction to the jury in several cases. In *Redd v. Airway Motor Coach Lines, Inc.*, 104 Utah 221, 137 P.2d 347 (1943), *Christiansen v. Utah Transit Auth.*, 649 P.2d 42 (Utah 1982) and *Anderson v. Toone*, 671 P.2d 170 (Utah 1983), the Court found no error in the trial court's submission of a sudden emergency instruction.

In *Redd*, the Court found the instruction proper where the jury was not compelled by the evidence to conclude that defendant was driving without due care. *Redd*, 137 P.2d at 378. Similarly, in *Christiansen*, the Court upheld a sudden emergency instruction despite the fact that the jury found both parties partially negligent. The Court reasoned that the instruction was proper because it was supported by some evidence and by one of the parties' theories. *Christiansen*, 649 P.2d at 47. Finally, in *Anderson*, the Court found no error where the sudden emergency instruction presented defendant's theory of the case that he had not acted negligently. *Anderson*, 671 P.2d at 174.

■ In this case, plaintiff testified that she saw defendant's truck some distance south of her, entirely on the shoulder of the road, moving south slowly. She could not determine what defendant was doing but assumed he intended to slow the truck to a stop and park it. (In fact, defendant was "road hunting" for pheasants.) When she was four or five car lengths from him, he steered his truck into plaintiff's lane directly in front of her. It is undisputed that defendant did not signal

before driving onto the road from the shoulder. Plaintiff's theory of the case was that she was not at fault for failing to anticipate defendant's negligence in pulling out in front of her. The trial court's submission of the sudden emergency instruction to the jury was in accordance with plaintiff's theory of the case and was supported by evidence presented at trial. The jury's ultimate determination that plaintiff was 20% negligent does not nullify the propriety of the instruction. Likewise, we reject defendant's contention that plaintiff was obviously negligent for failing to move into the left lane prior to passing defendant. Plaintiff was driving on a two-lane road and should not necessarily be expected to cross the center line to avoid a car driving slowly on the shoulder. The question of plaintiff's negligence was a question of fact for the jury and the trial court could not conclude as a matter of law that plaintiff was negligent.

Defendant cites two Utah cases which he contends are indistinguishable from this case and dictate reversal of the trial court's denial of the motion for a new trial. In *Solt v. Godfrey*, 25 Utah 2d 210, 479 P.2d 474 (1971) and *Keller v. Shelley*, 551 P.2d 513 (Utah 1976), the Court found as a matter of law that the sudden emergency or peril did not arise without fault by the defendants. In *Solt*, defendant, while driving his automobile, hit a two-year, eight month old child who followed a ball into the street. Defendant testified he was driving 30 to 35 miles per hour when he observed the child come upon the roadway 60 to 80 feet in front of him. Defendant applied his brakes but was unable to avoid striking the child. Defendant did not contend that there was any sudden darting and the Court found the sudden emergency instruction improper due to the absence of evidence of a sudden or unexpected situation arising without the fault of defendant. The Court said the defendant saw what he should have seen all the time and was therefore negligent. The Court, in reversing, noted that "[u]nder the evidence given in this case it is difficult to see how the jury could have found for the defendant unless they were misled by some instruc-

tions given by the Court." *Solt*, 479 P.2d at 476.

The case before this Court differs from *Solt* in two important respects. First, in this case, plaintiff contends defendant's act of pulling out in front of her caused a sudden and unexpected situation, whereas in *Solt*, no such claim was made. Second, there is substantial difference between a child chasing a ball into the street and an adult in an automobile pulling out in front of another vehicle without signaling. A young child is reasonably likely to run into a street in front of a car. Conversely, an adult would reasonably be expected to first look behind him and signal before pulling into the road from the shoulder.

Similarly, *Keller* involves a situation where no evidence was submitted to demonstrate a sudden and unexpected situation arising without fault on the part of the plaintiff. *Keller*, 551 P.2d at 514. In *Keller*, defendant, while passing another vehicle, drove into the rear of plaintiff's vehicle. The Court recognized that a driver intending to pass another vehicle must be certain that he can safely pass the other vehicle. When defendant attempted to pass, plaintiff was stopped waiting for traffic to clear so she could make a left turn. The Court found the sudden emergency instruction improper because defendant was clearly negligent. Unlike *Keller*, in this case plaintiff was not undisputably negligent. Therefore, in light of plaintiff's evidence submitted at trial and her theory of the case, the instruction was proper.

## II

■ Defendant's next claim is that the trial court erred in refusing to allow evidence concerning plaintiff's failure to wear a seat belt and by failing to submit an instruction to the jury that nonuse of a seat belt may mitigate damages.

A majority of other jurisdictions have held that evidence of nonuse of a seat belt on the issue of mitigation of damages is inadmissible. *Britton v. Doehring*, 286 Ala. 498, 242 So.2d 666, 671 (1970); *Nash v. Kamrath*, 21 Ariz.App. 530, 521 P.2d 161,

164 (1974); *Fischer v. Moore,* 183 Colo. 392, 517 P.2d 458, 459 (1973); *Lipscomb v. Diamiani,* 226 A.2d 914, 918 (Del.Super. 1967); *McCord v. Green,* 362 A.2d 720, 726 (D.C.1976); *Hampton v. State Highway Comm'n,* 209 Kan. 565, 498 P.2d 236, 248–49 (1972); *Schmitzer v. Misener-Bennett Ford, Inc.,* 135 Mich.App. 350, 354 N.W.2d 336, 340 (1984); *Miller v. Haynes,* 454 S.W.2d 293, 300 (Mo.Ct.App.1970); *Selgado v. Commercial Warehouse Co.,* 88 N.M. 579, 544 P.2d 719, 722 (1975); *Fields v. Volkswagen,* 555 P.2d 48, 62 (Okla.1976). We agree with the rationale of those cases and hold similarly that seat belt evidence is inadmissible in this case which arose prior to enactment of the present Utah statute.[1]

### III

The third issue raised on appeal is whether the trial court erred in failing to grant a new trial due to the juror's[2] use of a dictionary. According to affidavits submitted to the court, the jury, during deliberations, asked the bailiff for a dictionary to define "proximate" in order to understand "proximate cause."[3] The bailiff complied.

■ Clearly the jury's request for a dictionary and consideration of "proximate" was improper and irregular. *State v. Donald,* 90 Utah 533, 537, 63 P.2d 246, 248 (1936). The jury was instructed that "it is your duty to follow the law as the court states it to you." The proper procedure would have been for the jury to report the difficulty to the court and for the court to instruct the jury on the definition of "proximate". *Id.* Despite the obvious improper conduct of the jury, such conduct must prejudice the substantial rights of defendant to warrant reversal. *Id.;* Utah R.Civ.P. 61.

In *State v. Donald,* the Utah Supreme Court held, in a forgery case, that a jury's use of a dictionary to define "utter" did not prejudice the substantial rights of defendant and did not warrant reversal. The Court explained that even if the judge had instructed the jury on the definition of "utter" it would have been the same in substance as the dictionary definition read by the jury.

In this case, the record does not contain the actual definition of "proximate" the jury read nor identify the dictionary used. Without that definition we cannot compare the legal definition of "proximate cause" with the definition of "proximate" examined by the jury. In the absence of that crucial information, we do not find any basis for finding that substantial rights of defendant were prejudiced by the juror's reference to the dictionary.

Plaintiff, who nonetheless saw fit to provide a counteraffidavit designed to diffuse the gravity of the juror's use of the dictionary, claims the trial court erred in considering the affidavit due to the restrictions imposed by Utah R.Civ.P. 59(a)(2). Rule 59(a)(2) states:

Subject to the provisions of Rule 61, a new trial may be granted ... for any of the following causes ... (2) Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by resort to a determination by chance or as a result of bribery, such misconduct may be proved by the affidavit of any one of the jurors.

In several Utah cases, the Utah Supreme Court has interpreted Rule 59(a)(2) and held that the rule authorizes a jury verdict to be impeached by the affidavit of a juror only when the verdict was determined by chance or bribery. *Rosenlof v. Sullivan,* 676 P.2d 372, 375 (Utah 1983); *Groen v. TRI–O–INC.,* 667 P.2d 598, 603 (Utah

---

**1.** At the time this case was tried, the legislature had not enacted Utah Code Ann. § 41–6–186 (1987) which provides that "failure to wear a seat belt does not constitute contributory or comparative negligence, and may not be introduced as evidence in any civil litigation on the issue of injuries or on the issue of mitigation of damages."

**2.** How many jurors used the dictionary is unclear. For simplicity we will refer to one juror.

**3.** Both plaintiff and defendant submitted affidavits from different jurors regarding the use of the dictionary.

1983); *Smith v. Barnett,* 17 Utah 2d 240, 408 P.2d 709, 710 (1965). The policy behind the narrow interpretation of the law was set forth in *Wheat v. Denver & R.G.W.R. Co.,* 122 Utah 418, 250 P.2d 932 (1952):

> To permit litigants to get jurors to sign affidavits or testify to matters discussed in connection with their functions as jurors would open the door to inquiry into all manner of things which a losing litigant might consider improper: misconceptions of evidence or law, offers of settlement, personal experiences, prejudice against litigants or their causes or the classes to which they belong. It would be an interminable and totally impracticable process. Such post mortems would be productive of no end of mischief and render service as a juror unbearable. If jurors were so circumscribed in their deliberations, it is likely that judge and counsel would have to be present in the jury room attempting to monitor and regulate their thought and discussions into approved channels.

*Id.* 250 P.2d at 937.

Although the Utah Supreme Court has narrowly interpreted 59(a)(2) and limited the circumstances under which jury affidavits may be admitted into evidence, the Court also adopted the Utah Rules of Evidence on April 13, 1983 and made them effective as of September 1, 1983. Under Utah R.Evid. 606(b) "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." The Court's adoption of Rule 606(b) indicates an intent to allow juror affidavits into evidence under the circumstances described in 606(b). In effect, Rule 606(b) provides another exception to the general rule that juror affidavits are inadmissible.

■ Applying 606(b) to the facts of this case, the dictionary was "extraneous information." Clearly, the judge did not give the dictionary to the jury. Whether it was "prejudicial" was dependent upon the definition examined by the jury. Because a question existed as to whether or not use of the dictionary was "prejudicial," both affidavits were admissible under 606(b).

## IV

■ Finally, defendant argues that the jury verdict was unreasonable and was based on passion, prejudice and insufficient evidence. Juries are given wide discretion in assessing damages. *Amoss v. Broadbent,* 30 Utah 2d 165, 514 P.2d 1284, 1287 (1973). When a jury determines a question of fact, its verdict will not be disturbed if it is supported by any competent evidence. *Time Commercial Financing Corp. v. Davis,* 657 P.2d 234, 236 (Utah 1982); *Uinta Pipeline Corp. v. White Superior Co.,* 546 P.2d 885, 886 (Utah 1976); *Nelson v. Peterson,* 542 P.2d 1075, 1076 (Utah 1975). Further, this Court will defer to the jury's verdict unless it is "so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice or corruption." *McAfee v. Ogden Union Ry. & Depot Co.,* 62 Utah 115, 129, 218 P. 98, 104 (1923).

■ The record indicates that the jury's verdict is supported by competent evidence. Further, the damages awarded are not shockingly excessive in light of the extensive injuries suffered by plaintiff.

Affirmed.

BENCH and ORME, JJ., concur.